## Louisville & Nashville Railroad Company v. Franklin, et al.

(Decided June 7, 1916.)

### Appeal from Webster Circuit Court.

1. Waters and Watercourses—Action for Obstructing Drainage Ditches.—In an action in equity to compel a railroad company, by mandatory injunction, to provide sufficient openings in certain places under its roadbed and to remove piling supporting a trestle across a public drainage ditch; evidence examined and held to show that the water naturally flowing in the ditches after ordinary rainfalls is held back and caused to overflow plaintiff's lands by the insufficient openings.

2. Waters and Watercourses—Permanent Trestle Causing Overflow—Remedy.—Where in addition to injury inflicted to lands by overflow caused by improvements of permanent character, the health and lives of the owners and their families are threatened by further maintenance of the conditions, the owners are not confined

to an action at law for damages in the way of depreciation in market value of the lands, the one recovery sufficing, but may maintain an action in equity to compel the abatement of the nuisance by mandatory injunction.

3.  Waters and Watercourses—Statutory Provisions—Remedy.—Under subsection 2, section 2412a, Kentucky Statutes, relief by mandatory injunction to compel the removal of obstructions of creeks or ditches is authorized.

4.  Nuisance—Abatement.—A nuisance injuriously affecting the public and also a private right common to plaintiffs, gives them such a community interest as entitles them to unite in an action to abate it.

5.  Waters and Watercourses—Obstruction of Ditches—Proper Relief.—The lower court holding that overflows were caused by a railroad's failure to keep the opening under its trestle free of debris, and it appearing that it may be able to keep the ditch free of obstruction and yet retain the piles upon which the trestle is constructed; the court instead of requiring the construction of a span bridge, should direct the railroad company to use such means as may be necessary to keep the trestle free of debris, the court reserving control of the case and if it be discovered that no other effective means can be found, then requiring the removal of the piles.

C. H. MOORMAN, HUNT & WITHERS and YEAMAN & YEAMAN for appellant.

BOURLAND & BLACKWELL for appellees.

OPINION OF THE COURT BY JUDGE SETTLE.—Affirming in part and reversing in part.

These two actions, in one of which the appellees, J. W. Franklin, and twelve others are plaintiffs and in the other the appellees, J. W. Stodghill, and ten others are plaintiffs, were brought in equity against the appellant, Louisville & Nashville Railroad Company, to compel the abatement, by a mandatory injunction, of an alleged nuisance created and maintained by the latter, the petition in each case alleging, in substance, that the appellees are the owners and in the actual possession of certain several tracts of land in Webster county, described in the petitions, lying above and on the northeast side of the appellant, Louisville & Nashville Railroad Company's railroad and right of way; that the line of railroad is known as the Morganfield & Atlantic railroad, runs from Morganfield, in Union county, to Providence, in Webster county, this State, and is owned and operated by the ap-

pellant, Louisville & Nashville Railroad Company; that the line of railroad crosses what is known as Caney Fork valley, in Webster county, where appellees' lands lie, at right angles with the flow of the water therein; that the Caney Fork valley contains fifteen or twenty thousand acres of very fertile but low land and is drained by several public and private ditches which, before the construction of the railroad, furnished a reasonable outlet for the water which fell upon and collected in the valley following usual and ordinary rainfalls.

The particular injuries complained of from appellant's construction and maintenance of its railroad are thus set forth in the petitions:

"Plaintiffs say that said railroad embankment as constructed and as maintained by the defendant is constructed and maintained in a negligent, wrongful and unlawful manner and in violation of the rights of these plaintiffs in this, that said railroad embankment as constructed and as now maintained crosses a private ditch of the plaintiff, W. W. Carter, which private ditch had and has a large carrying capacity and where same is crossed by defendant's railroad a small sewer pipe, or tile opening which is wholly inadequate and insufficient to furnish an outlet for the water which naturally flows down said ditch and which, before the construction of said railroad, passed on down unobstructed to its outlet, which is a large public ditch; that where said railroad embankment crosses a natural and well defined water course at or near the point where said railroad crosses the lower Clay and Bordley public road an embankment several feet in height was constructed and is now being maintained by defendant and no opening in said railroad embankment or other provision has been made for the outlet of said water which formerly naturally flowed from the northeast to southwest across where said railroads embankment is now thrown up, and by reason of said embankment being thrown up and no opening made therein, the water in said natural courses is completely dammed up and caused to flow upon the lands of plaintiffs during each and every rainfall of any consequence and the crops growing on many hundred acres are thereby frequently destroyed or greatly damaged and the lands of the plaintiffs, which are naturally fertile and productive, are rendered uncertain for tillage and practically worthless as farm lands and of no use for any other purpose; and they say that so long

as said railroad embankment is permitted to remain in its present condition and without adequate openings it is reasonably certain that these overflows will continue to recur. They further allege that on account of the insufficient opening through said embankment at the point where it crosses the said ditch on the lands of W. W. Carter, the water therein in times of usual and ordinary rainfall in that vicinity is greatly impeded in its flow, is caused to overflow the banks of said ditch and flows back upon the lands of these plaintiffs, and said lands, which are fertile and productive, are rendered uncertain for crops and the crops thereon are frequently overflowed and destroyed or greatly damaged; and they say that by all the wrongs and grievances therein complained of, done, committed and permitted by the defendant, said lands are made swampy and the surrounding and adjacent country made unhealthful and the health of plaintiffs and their families greatly impaired, all to their great annoyance and damage.

"The plaintiffs further allege that good and sufficient openings can be placed in and through said railroad embankment sufficient to furnish an outlet for said water at the point where the W. W. Carter ditch strikes said railroad embankment or right of way and at the natural water course near the said public road without injury or damage to defendant's railroad and with no greater cost to defendant railroad company than the actual cost of putting said openings through said embankment, which cost will be trivial.      *   *   *      That prior to the building of said road and the throwing up of the embankment of said road through said Caney Fork valley, old Caney Fork creek had been straightened by a public ditch, known as the J. W. Franklin ditch, which said public ditch was constructed by assessing and collecting from plaintiffs and others along said ditch the cost thereof and that the same has ever since been and is now being maintained by assessment and collection of taxes upon the lands of plaintiffs.

"They state that in the construction of said railroad the defendant   *   *   *   threw up an embankment across said Caney Fork valley from three to five feet above the general surface of the land and that in crossing said public (Franklin) ditch piles from twelve to eighteen inches in diameter, were driven in the bed of said public ditch and a bridge erected thereon; that some seven or eight

bents or rows of such piling were so driven in said public ditch, and plaintiffs charge that said piling so driven and now being maintained by the defendant causes logs, brush and debris of all sorts to lodge against same and cause a dam to form in the bed of said public ditch, sediment and sand bars to form and settle therein, thereby greatly diminishing the capacity of said ditch, obstructing the flow of ordinary and usual rainfalls in that vicinty and greatly increasing the labor and expense necessary in keeping said public ditch open, which is done as aforesaid by assessing the property of these plaintiffs and the collection of taxes thereon; and they further state that much of the lands of these plaintiffs is thereby flooded with water, their crops damaged and destroyed by each recurring heavy rainfall during the crop season. They say that the openings in said embankment across said valley and the bridge across said public ditch as constructed and as now maintained by the defendant railroad company are wholly inadequate and insufficient to permit the water which usually and ordinarily falls in that community to flow down said valley and through said public ditch within a reasonable time and that great and irreparable injury will result to these plaintiffs if said railroad embankment and the bridge across said public ditch are permitted to remain in their present condition; that plaintiffs cannot be adequately compensated by suits at law and judgments for damages for the injury and loss resulting to them, their lands, crops and said public ditch, and if said road-bed and bridge are permitted to remain in their present condition, frequent and vexatious suits will be necessary to in any manner compensate the plaintiffs for the injury and damage that will thereby result to them from defendant's said negligent and wrongful acts. Plaintiffs further allege that said rows of piling can be removed from said public ditch and a single span, steel girder bridge be placed across said public ditch without injury to the said defendant railroad company or its said railroad beyond the actual cost of making said repairs. * * * That plaintiffs have made frequent requests of the defendant railroad company to abate the above nuisance and to remedy the wrong by making said adequate openings through said embankment, but they say that the defendant has ignored their said requests and has failed to

grant to them the relief to which they are entitled or any relief whatever.''

The answer of appellant to each of the petitions contains a traverse and alleges that its railroad was constructed across Caney Fork valley in a skillful and proper manner; that it is a permanent structure; that it cannot be changed from its present condition; that to make the change asked for in the appellees' petition would cause greater damage to persons other than the appellees than the damage complained of by the appellees, and asked that any damage to the lands of the appellees or any of them be ascertained and assessed in a lump sum and that it be permitted to pay the same once and for all. A reply was filed to each of the answers, controverting its affirmative matter. After thus making up the issues the two cases were consolidated and following the taking of proof were submitted and heard together, resulting in a judgment granting the mandatory injunction prayed by the appellees, requiring appellant to remove from the Franklin ditch the piling and so construct its bridge across the ditch as to span it without piles, the work to begin at once and to be completed by the fifteenth day of July, 1915, but the court reserved the right to extend the time for the completion of the work upon proper showing by the appellant. The judgment further directed that appellant place in and through its embankment at point "B" as shown by the diagram filed with the deposition of J. W. Franklin, and also at the land line between the Moore heirs and W. W. Carter, designated in the evidence as the Moore crossing, openings through the road bed with carrying capacity each not less than a thirty-six inches sewer pipe, the bottoms of such openings to be as low as the bottom of the private ditches to be constructed to and from those points; the last named openings to be placed in the road bed when such private ditches should be constructed to the appellant's right of way. The court, however, also reserved the right to determine later the matter of the proper depth of the present sewer pipe at the W. W. Carter ditch and, if necessary, to require appellant to make a larger opening at that point. Appellant complains of the judgment, hence this appeal.

Appellant's counsel do not strongly complain of that part of the judgment which requires them to make the thirty-six-inch pipe openings at the point "B" and at the Moore crossing, and frankly admit that these openings can be made at small cost; but claim that the appellant is very much prejudiced by that part of the judgment requiring the change at the Franklin ditch, insisting that it will cost appellant to remove the piles therefrom and construct a bridge in lieu of the trestle which is now maintained at that point, not less than $15,000.00.

The evidence introduced in appellees' behalf strongly conduced to prove all the material averments of the petitions; that is, that after every rainfall of any magnitude trees, logs, brush and other debris floated down the J. W. Franklin public ditch and lodged against the rows of piles driven therein by appellant and used as supports for its bridge or trestle spanning the ditch; that the lodging of these logs, driftwood, etc., against the piles caused a dam to form above the bridge and embankment, the water in the ditch to overflow its banks and back upon the lands and crops of the appellees, and that this obstruction of the Franklin ditch and the inadequacy of the openings at the point "B," Moore's crossing, and where the Carter ditch emptied its contents through the railroad bed had often caused the water on the upstream side of the railroad embankment to flow back upon appellees' lands and crops, to a depth of from six inches to four feet greater than it was immediately below and on the opposite side of the railroad embankment. The foregoing facts were shown by substantially all of the appellees' witnesses, who were owners of or lived contiguous to the lands subject to overflow and whose familiarity with the conditions enabled them to speak understandingly of the matters with respect to which they testified, nor were these facts definitely denied by any of appellant's witnesses, mainly experts, whose testimony was directed more particularly to showing that the obstruction of the water above the railroad embankment was due to the insufficiency of outlet below the railroad embankment.

These witnesses were not able to account for the established fact that the water on the upstream side of the railroad embankment was often discovered to be from six inches to four feet deeper than it was at the same time immediately below the embankment and between it and a ditch known as the Bishop ditch, which constituted the

outlet of the Franklin ditch and of the waters of the entire valley from the upstream side of the embankment. Appellees' evidence also strongly conduced to show that the lodging of debris against the piles in the Franklin ditch prevented a proper scouring of the ditch by the flowing waters, which caused it to gradually fill, made it more difficult and expensive to maintain and lessened its value as a means of drainage. It is also apparent from their evidence that the additional openings demanded by them are at points where appellant's road bed had stopped well defined water courses through which the water falling above had been wont to escape before the railroad embankment was constructed; and further, that the making of the additional openings that are required by the judgment of the circuit court would render appellees' lands far less subject to the overflow of waters coming down through the valley from ordinary rainfalls.

We do not think appellant's contention, that the overflow of the lands on the upstream side of its railroad embankment is caused by the insufficiency of the Bishop ditch on the opposite side to carry off the water, can be said to be sustained by the evidence. While the Carter and the Franklin ditches both empty into the Bishop ditch, the former reaches it a mile below the mouth of the Franklin ditch and the weight of the evidence tends to prove that the water from the Carter ditch, which is only a mile in length, passes down the Bishop ditch before the water from the Franklin ditch reaches the mouth of the Carter ditch; and also that the Franklin ditch, being a straight one, having a good fall and the water therein running at a more rapid rate than does that in the Bishop ditch, above and north of the point where the Bishop and Franklin ditches meet, the water from the Franklin ditch will have found its way out through the Bishop ditch before the latter has brought its burden of water received elsewhere than from the Franklin ditch, to Caney Fork valley, and at the same time help to force the waters of the Bishop ditch to a point at or below the mouth of the Carter ditch, from which to where it empties into Crab Orchard creek, it has a fall of from nine to ten feet. In other words, before the stronger current of the water in the mouth of the Franklin ditch can be affected by conditions at the mouth of the Bishop ditch, the water at the mouth of the Bishop ditch would have to be nine or ten feet deep, and, according to the evidence, no such

conditions have ever existed or can exist, for the reason that the Bishop ditch has not only Crab Orchard creek but the entire Crab Orchard valley, which is much larger than the Caney Fork valley, into which to pour its waters and relieve itself if its channel is full, and has ample fall to afford it such relief. The overflows complained of by appellees are, according to the evidence, such as result from usual and ordinary rainfalls in that vicinity, but the appellant's testimony seems to be mainly directed, when referring to insufficiency of outlet, to showing the conditions that could only result from unusual rainfall. Considering the evidence as a whole, we think it leaves little doubt that the water is held back and made to overflow appellees' lands because of the obstruction afforded by the insufficient openings in appellant's roadbed.

It does not require proof to show that water standing on land renders it more difficult and expensive to cultivate and less productive. The extent of the injury therefrom to the land and damage to the owner, in the absence of knowledge as to how frequent the overflows will occur, can only be arrived at approximately. It is, therefore, impossible to figure in dollars and cents what the injury to any of the present owners would be from these conditions during his lifetime. The very fact that the overflows must continue from time to time as long as the conditions which cause them exist, makes it impossible to calculate the ultimate damage that may result; consequently it may well be said that the damage is irreparable and such as cannot fairly or reasonably be compensated by a recovery in an action following each overflow of the land. The destruction of land is not a thing to be encouraged, as not only the present owners are entitled to the benefit of what it will produce for them, but also those who are to come after them will be entitled to look to its fertility for the same benefits that are derived from its cultivation by those who now own it; and the fact that the government of the United States is expending annually large sums of money for the reclamation of both arid and swamp lands, demonstrates that its destruction is forbidden by public policy.

It is strongly argued by counsel for appellant that the injunction should not have been granted, because an action at law by each of the appellees for damages resulting from the injury to his land would have afforded an adequate remedy and that the rule applicable in such case

would be that announced in Central Consumers Co. v. Pinkert, 122 Ky. 720; M. H. & E. R. Co. v. Wiar, 144 Ky. 206; L. & N. R. Co. v. Whitsell, 125 Ky. 433; I. C. R. Co. v. Haynes, 144 Ky. 580, and others, which hold that where the improvement causing the overflow of the lands is of a permanent character, or of such nature that the obstruction it causes cannot be removed or remedied at reasonable expenses, the damages recoverable by the owner is the depreciation in the reasonable market value of the land, and the one recovery must suffice. Although the rule referred to is one remedy to which appellees might have resorted, it cannot, under the conditions here presented, be declared wholly adequate, for here, in addition to the injury inflicted to their lands and its certain continuance, their health and lives and that of their families, according to the averments of the petitions and the proof, are threatened by appellant's further maintenance of the conditions complained of as constituting the nuisance.

In 40 Cyc., page 591, it is said:

"The court of equity may give relief by injunction against an obstruction of a water course, and this remedy is available, not only to restrain the continuance of an obstruction already constructed, but also to prevent the erection of an obstruction which is threatened. It is not generally necessary for a complainant first to establish his rights by an action at law, and although he must allege some substantial and appreciable injury to his rights, either present or prospective, he is entitled to a decree for their vindication as well as for their preservation and hence, need not prove actual damages.  *  *  *"

Again, in 40 Cyc., page 656, it is said:

"In case of injury to real property by an unlawful accumulation or discharge of surface water upon it, equity will give relief by injunction, not only to restrain the continuance or repetition of the unlawful and injurious acts, but also to prevent the carrying out of a project of work which is threatened and which will clearly have the injurious effect anticipated, and this without much regard to the fact that no additional injury has yet been sustained or that the damage is but trifling.  *  *  *  The injunction if granted,  *  *  *  may take the form of a mandate to compel the removal of the cause of injury and a restoration of the land to its former condition or the construction of suitable outlets."

In Ecton, etc. v. L. & E. R. Co., 21 R. 921, it was held that, ''Where a culvert constructed over a railroad embankment, in order to permit the flow of a stream in its natural course proving insufficient for that purpose, one whose premises are flooded thereby after every rainfall of any magnitude may maintain an action to compel the abatement of the nuisance which is a continuing and recurring one.''

In Hahn & Harris v. Thornberry, 7 Bush 403, it is declared:

''Where there is such an injury as from its nature is not susceptible of being adequately compensated by damages at law, or such as from its continuance or permanent mischief must occasion a constantly occurring grievance which can not be otherwise prevented * * * where the loss is irreparable or where the loss of health, loss of trade, destruction of the means of subsistence, or permanent ruin to property may or will ensue from the wrongful act or erection * * * in every such case courts of equity will interpose by injunction in furtherance of justice and the violated rights of property.'' Roberts v. Martin (W. Va.), 77 S. E. 535; Baskett v. Tippin, et al., 66 S. W. 374; Schuette v. Sutter, 128 Minn. 150; Story Equity Jurisprudence, section 925.

But in addition to the considerations mentioned, we have in this state a statute with respect to the drainage of lands, section 2412a, subsection 2 of which forbids the maintenance of such obstructions of creeks or ditches as are here complained of, the provisions of which authorize the injunctive relief sought by appellees. The nuisance not only injuriously affects the public, but it also injuriously affects a private right common to each of the appellees; hence, they have such a community interest as entitled them to unite in an action to abate it. Seifried v. Hays, etc., 81 Ky. 377.

We are not satisfied, however, that the injunction granted should have required appellant to remove the piles and replace the trestle or bridge spanning the Franklin ditch by a new structure. Undoubtedly the trestle over the Franklin ditch was improperly constructed and is so maintained, but we are of opinion that appellant should not be put to the expense of removing the piles and substituting a bridge for the trestle, if it is practicable for it to remove and prevent the obstructions that there occur in some other way that would **prove**

substantially as effective. What the circuit court held was that appellant failed to keep the opening under its trestle clear of debris, which caused the overflows. There is no testimony in the record conclusively showing that it is not practicable for appellant to keep the debris from catching on the piling, and if, as may be inferred from the evidence, appellant can keep the ditch free of obstruction and yet retain the piles, it ought to be permitted to do so. We are of opinion, therefore, that the injunction ought to be modified to the extent of permitting and directing the appellant to use such means as may be found necessary to prevent the Franklin ditch from becoming obstructed by the accumulation of debris upon or against the piles or supports of the trestle, and the court should reserve control of the cases until it can be determined whether the obstructions can be prevented by such means. If it should be discovered that no other effective means of preventing the obstruction of the Franklin ditch can be found, the court may still, by injunction, compel the removal of the piles. In other words, the relief granted should, as held in Siefried v. Hays, etc., *supra,* go no further than the exigencies of the situation demand.

For the reasons indicated the judgment, in so far as it requires the immediate removal by appellant of the piles in the Franklin ditch, is reversed; but in so far as it requires the making of the other openings therein specified, it is affirmed, and the causes are remanded to the circuit court for the entering of such judgment as will conform to the opinion.

Whole court sitting.