## Barrett, et al. v. Vreeland, et al.

(Decided February 15, 1916.)

### Appeal from Franklin Circuit Court.

1. Nuisance—Abatement and Injunction.—Where an individual is engaged in a business which is in and of itself injurious to the peaceful and comfortable enjoyment of the neighboring homes, any owner of any such home may enjoin the continuance of such business, and it is competent for any number of such owners' injuriously affected to join in a suit for the abatement of the nuisance; and the same is true when the business is not in and of itself injurious in the manner stated, but where the nuisance producing the injuries consists in the manner of the operation of the business.

2. Nuisance—Abatement and Injunction.—Where a nuisance is so conducted as stated above within a thickly populated city, town or community, the right of action to abate it is given to one who may become such citizen after the beginning of the acts constituting the nuisance.

3. Nuisance—Abatement and Injunction.—Where a perfectly legitimate business, which is complained of as a nuisance, is conducted in a city, town or thickly populated community, the evidence establishing the nuisance must be clear, positive and convincing before a court of equity will interfere to abate it, and annoyances and inconveniences ordinarily incident to the inhabitants of such cities, towns and communities from the operation of usual and necessary commercial enterprises will not be adjudged to be a nuisance and will not be abated by the equitable injunctive remedy.

4. Nuisance—Abatement and Injunction—Operation of Quarry With Use of Explosives.—Where the owner of a quarry operates it with the use of dynamite, the explosions from which are so extensive as to jar the neighboring houses and in some instances to shake the plastering from the walls thereof and at night to so operate or permit to be operated the machinery in such a way

as to disturb the quietude of such neighboring houses so that the inhabitants are prevented from sleep or rest, such acts constitute a private nuisance as to the owners of such premises, and when they are thoroughly established by the proof they will be enjoined.

5. Nuisance—Abatement and Injunction.—Where the owners of the premises affected by such an establishment have stood by without complaint and permitted large expenditures of money in the construction, equipping or improvement of such an establishment, its operation will not be enjoined unless the nuisance, as well as the extent of the injuries, are each established by the most clear and convincing testimony.

6. Nuisance—Abatement and Injunction—Damages.—A private individual, if his premises, or the reasonable enjoyment thereof, are injured, or damaged by a nuisance, which he sustains to a greater extent than the public generally, may sustain an action to abate the nuisance although it may also be a public one.

7. Nuisance—Abatement and Injunction.—The remedy by injunction to abate a nuisance will be more readily extended to a private individual where an injury to the right of enjoyment is invaded than where a physical injury to his premises is sustained upon the ground that the remedy at law for the latter would be much more adequate than for the former.

T. L. EDELEN and J. H. HAZELRIGG for appellants.

FRANK CHINN and BROWN & NUCKOLS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on the appeal and cross-appeal.

The appellees (eight in number) are each residents of the city of Frankfort, being the owners respectively of the houses in which they each reside with their families, and their property is located, some on Wapping Street, some on Watson Court and that of others on Wilkinson Street in said city. The residences of the appellees, Christine B. South and Frank Chinn, have no intervening residences or buildings between them and the Kentucky River, which runs immediately west of their lots. The residences of the other appellees are further away from the river and for the most part to the east of it, but, as is claimed in the petition, their residences are located sufficiently near to the property of appellants as to be affected by its operation, as is complained of in this suit.

Immediately west of this property and across the Kentucky River the appellants maintain, and have maintained, a rock quarry, which they have operated more

or less constantly since the year 1906, they having acquired the land upon which the quarry is located in the year 1900. Claiming that for several years past, the appellants had operated this quarry in such a way as to invade the peaceful, quiet and comfortable enjoyment of the right of appellees to occupy their property as a residence by each of them, they on December 20, 1913, filed their joint petition in equity in the Franklin circuit court against the appellants, Guy Barrett and A. G. Barrett, doing business under the name of Devil's Hollow Stone Co., seeking to enjoin them from so operating their quarry as to interfere with the appellee's rights, before mentioned, and claiming that the operation of it in the manner stated was and had been a nuisance, which was sought to be abated by the injunctive process prayed for in the petition.

The objectionable acts in the operation of the quarry sought to be enjoined can best be stated in the language adopted in the petition, which is as follows: "In operating this quarry the defendants have continuously for more than five years last past blasted the rocks from the river cliff, over a space about 150 feet from the bottom of the quarry to the top of it, with heavy charges of dynamite, powder and other such explosives, which have thrown rocks entirely across the river and upon the property of plaintiffs, thereby endangering their lives, on divers different occasions, and have repeatedly shaken the houses of plaintiffs upon their foundations, like an earthquake would do; have knocked the plastering from their walls and put their families in fear of their lives. During all of said time, defendants have also operated a rock crusher, with steam, at the same point, crushing the hard stones thrown out of the hillside by said blasts, and thereby filled the air with dust, soot and smoke, which is blown into the homes of plaintiffs, the dust, soot and smoke so thick and penetrating as to injure the furniture of their homes and otherwise render their homes uncomfortable, and the noise from the peculiar machinery of the rock crusher which is run day and night, at times, is so great as to drown out and prevent ordinary conversation in the homes of several of plaintiffs, and prevent sleep at night."

The answer consists of a general denial, and in another paragraph an effort is made to rely upon a prescriptive right to so manage and use the quarry, as it

is claimed that the quarry had been operated at the same place since about the year 1852; and it is further urged in defense that appellants, since they began its operation, have expended considerable sums of money in equipping it to its present capacity and that appellees stood by without protest and acquiesced in this expenditure; and that for these reasons they should be denied the relief sought. It is also insisted in the answer that some of the appellees have acquired their property since the commencement of the operation of the quarry by appellants, and that so far as these are concerned they are not entitled to any relief upon the insisted doctrine that they "have moved to the nuisance," if one exists. With the exception of the latter contention as to such defendants, the reply is a denial of the allegations of the answer.

After very extensive preparation and a submission of the cause, the court adjudged in substance, that appellants be perpetually enjoined from discharging or permitting to be discharged such blasts of dynamite or other explosives in the operation of the quarry as would jar the houses of the plaintiffs, or any of them, "to such an extent as would interfere with the comfortable or reasonable enjoyment of their homes, or houses, or to cause said houses, or any of them, to vibrate or shake, or to cause the plastering or tiling, or other coverings of the walls, or ceiling in any of said houses to crack or fall or be in any way damaged, or cause other injury to any of said houses; or cause rocks or dirt or other debris to be thrown on the property of plaintiffs, or any of them." The appellants were further enjoined from "making or permitting to be made at night any noise by the machinery at the quarry, or in the operation thereof, which would disturb or interfere with the peace and quiet of the homes of plaintiffs, or any of them, or with the rest or sleep of the plaintiffs, or any of them, or their families, or any of them." The court declined to enjoin the appellants from the operation of the rock crusher. From so much of the judgment as granted relief to appellees, the appellants appeal; and from the refusal of the court to restrain in any manner the operation of the rock crusher, the appellees prosecute a cross-appeal.

The first ruling of the court, brought in question by a special demurrer to the petition and by a motion to

require plaintiffs to elect, is the right of appellees to jointly prosecute this suit. That they may do so under the facts disclosed by their pleading, there can be no doubt. Sustaining the right, the author of the excellent work of Wood on Nuisances, 2nd Ed., page 1160, says: "Where several persons are injured by a common nuisance, although varying in degree but having a common effect, they may join in a bill for an injunction, but there can be no recovery of damages."

Section 22 of our Civil Code of Practice is:

"All persons having an interest in the subject of an action and in obtaining the relief demanded may be joined as plaintiffs, unless it is otherwise provided in this Code."

Mr. Newman in his work on Pleading and Practice, section 153, in commenting on this section of the Code, *supra,* says:

"So, also, different persons owning separate tenements affected by a nuisance may unite as plaintiffs to restrain by injunction its continuance."

This rule of practice has also been upheld by this court in the following cases: Louisville Coffin Co. v. Warren, 78 Ky., 400; Seifried v. Hays, 81 Ky., 377; Palestine Building Association v. Minor, 27 Ky. L. R., 781; Beckham v. Brown, 19 Ky. L. R., 519. Many other authorities might be cited, but the rule permitting the right of persons similarly circumstanced and affected by the acts complained of to unite in one petition for relief is so universally settled as to render further consideration of the question unnecessary.

That this character of action may be maintained where the facts justify it, is equally as well settled as the question just disposed of. The right to the remedy by the individual citizen is recognized by Mr. Pomeroy in his work on Equity Jurisprudence in section 1349, wherein he says:

"A public nuisance will also be restrained at the suit of a private person who suffers therefrom a special and particular injury distinct from that suffered by him in common with the public at large."

And the same author again says in section 1350:

"It is a well settled doctrine that equity will restrain a private nuisance at the suit of the injured party. * * * The equitable jurisdiction is therefore based upon the motion of restraining irreparable mischief, or

of preventing vexatious litigation, or a multiplicity of suits.''

The same right to such relief is found in all standard works on equity jurisprudence or equitable relief. And in Cyc., Vol. 29, page 1191, the doctrine is thus stated:

''The question in all cases is whether the annoyance produced is such as to materially interfere with the ordinary comfort of home existence. It is not of course necessary that the annoyance and discomfort should be so great as to actually drive the person complaining thereof from his dwelling; but if the alleged injury be a plain interference with the ordinary comforts and enjoyments, there is a nuisance, no matter how slight the damage, provided the inconvenience be actual and not fanciful.''

Many cases and authorities almost innumerable could be cited from other jurisdictions, but which we think is unnecessary. The maxim: *"Sic utere tuo ut alienum non laedas,"* is an ancient as well as a just rule and is patterned after the one which is elsewhere more comprehensively stated: ''And as ye would that men should do to you, do ye also to them likewise.'' The right to this remedy, under the pleadings and proof here, has on numerous occasions been upheld by this court, and indeed, so far as we can learn, has never been denied by it. Louisville Coffin Co. v. Warren, 78 Ky., 400; Seigfried v. Hays, 81 Ky., 377; Palestine Building Association v. Minor, 27 Ky. L. R., 781; Phillips v. Elizabethtown B. & C. Factory, 15 Ky. L. R., 574; Alexander v. Tebau, 132 Ky., 487; Louisville Home Telephone Co. v. City of Louisville, 130 Ky., 611; Peacock v. Spitzelberger, 16 Ky. L. R., 897; Green v. Asher, 10 Ky. L. R., 1006, and many other cases which might be cited.

The testimony taken and heard upon the trial showed substantially the following facts: The nearest house of any of the appellees to the quarry is 780 feet, the Kentucky River intervening. The quarry in which the blasting is done has a perpendicular facial surface of some 200 or more feet wide and something like 150 feet high and faces practically squarely towards the appellees' property. For some years before the filing of the suit very heavy explosions of dynamite would frequently be made at the quarry and on some occasions flying rock would light upon some of the houses of the appellees, but not upon all of them, and other and larger rocks

would upon occasions fall in the yards to the premises of some of the appellees. That these blasts would be exceedingly loud and produce great concussion in the atmosphere, causing the houses of appellants to shake and the windows to rattle; and upon more occasions than one, in some of the houses, within a short while after these explosions, the plastering on some of the walls would fall, this being true with regard to the residence of appellee, South, although the plastering was comparatively new. There is no testimony to show that any of the plastering thus affected was old or rotten, or that there existed any other cause for its falling except the excessive jars produced by these explosions. It was also shown by testimony, which is uncontradicted, that some kind of noise was permitted to be made at night, presumably by some of the machinery in use at the quarry, which noise invaded the premises of appellees and prevented the quiet and undisturbed enjoyment of their premises, which they claimed they had a right to enjoy unmolested. That this noise at night interfered with the sleep of the members of their families and rendered the habitation of the premises exceedingly annoying. There was also testimony to the effect that the rock crusher in the daytime produced similar disturbances, especially as to the premises of appellees, South and Chinn. The facts just related were not only testified to by the appellees, but by many other witnesses not interested in the result of the suit. On the contrary there were citizens residing upon the same streets of Frankfort with appellee who testified that they were not disturbed by these things to the extent to which appellees claimed to have been disturbed. Citizens residing in other parts of the city but relatively as near to the quarry as appellees gave similar testimony. None of the witnesses for appellants denied the casting of rocks upon the premises of some of the appellees, as was testified to by the latter, and none of such witnesses denied but that upon occasions the heavy explosions produced by the blasting occurred, but they stated that these explosions did not materially disturb them. Under this condition of the record the Chancellor was perfectly justified in finding the facts, as to the disturbances produced, as is testified to by the appellees and their witnesses. So, the question is, may such acts under the conditions presented by this record, by an appropriate proceeding, be enjoined?

At the beginning it may be stated that it is claimed that the acts proven show a public nuisance and the remedy should be by a proceeding prosecuted by the appropriate agent of the public, instituted in the name of the Commonwealth; or if not, by an indictment, and not by a proceeding for an injunction by the individual claiming to be affected. This contention, of course, is upon the idea and is insisted upon because of the rule that if an individual suffers no injury different from the other members of the public he cannot prosecute an individual suit to abate the nuisance, which rule is universally recognized and its soundness unquestioned. But all of the authors on the law who profess to write upon the subject acknowledge an exception, or rather give the right to an individual to sue in cases where he suffers a greater injury than other members of the public. This is to be seen in the words taken from Pomeroy, *supra,* and it is recognized in the opinion in the case of Palestine Building Association v. Minor, *supra,* in the following language:

"It is not denied that where private citizens suffer peculiar injury apart from that of the general public from nuisances, that they may maintain their action in equity to abate it, although the public, through the attorney general or Commonwealth attorney, may also have the right to proceed in the name of the Commonwealth to abate the nuisance."

And also in the opinion in the case of Green v. Asher, *supra,* wherein this court, through Judge Pryor, in upholding the right of the citizen to maintain the action, although the nuisance might in some respect be a public one, says:

"It is well settled that a public nuisance may become a private nuisance when special injury arises, and particularly when it is that character of nuisance that is continual, and affects the party complaining to a much greater extent than the public generally."

Many other cases from this court might be cited in substantiation of the point, but it is manifestly unnecessary. In the cases to which we have hereinbefore referred, the acts constituting the nuisance, as well as the character of the rights of the plaintiffs which were affected thereby, were different in each case. In many of them the atmosphere was polluted by noxious odors to such an extent as to render the occupancy of the prem-

ises of plaintiff greatly uncomfortable, although not to the extent of the impairment of health. In others there were noises and disturbances produced by the operation of ball parks, or disorderly houses, whereby the peaceful and quiet enjoyment of plaintiff's premises was unduly disturbed; and in still others the air around about the plaintiff's premises would be polluted by the acts complained of in such a way as to render the comfortable habitation of the premises impossible, such as smoke and other deleterious fumes; and in still other cases the nuisance was produced by loud and disturbing noises such as are involved in this case. The case of L. & N. R. R. Co. v. Sweeney, 157 Ky., 620, was one brought for damages against the railroad company for a physical invasion of plaintiff's premises by the blasting of rock through the use of dynamite whereby some of it was cast on plaintiff's premises. This court upheld the right of plaintiff to maintain the action; and where the acts complained of are of such a continuous nature as to produce a nuisance, we are unable to see wherein the injunctive remedy would not lie. It is not necessary to the maintenance of the action that there should be a physical invasion of the property of plaintiff through the objectionable acts of defendant. It is sufficient that there be an invasion of, or unlawful interference with, the right *incident to plaintiff's property;* and where this right *incident to his property* is sought to be protected, the remedy by injunction will be much more readily granted than where the injury is to the physical property. The latter is a tangible thing and has a visible and physical existence, as well as a marketable value which is susceptible of determination and can be definitely fixed, or at least practically so in dollars and cents. Whereas it is entirely different with a right incident to the property. This doctrine is fully recognized by Mr. Wood in his work on Nuisances, *supra,* in section 782, wherein upon this subject he says:

"But where a right is injured, no just or adequate measure of damages can be arrived at. It may, or it may not be, of present special value; it may, or it may not be, of considerable prospective value; in either case a jury will seldom give more than nominal damages for its violation, which is utterly inadequate to protect the right."

He then continues to say that in cases of injury to the property, courts of equity are more reluctant to grant relief because of the adequacy of the remedy at law, but where violations of, or injuries to, the rights *incident* to the property, this reluctance on the part of equity to interfere is moderated. In stating this rule, the learned author says:

"But in case of an injury to a right, that is a substantial right of property, which, as has heretofore been explained, is an incident of real property belonging or annexed to it, either as a material incident, or by grant or prescription, where the right is clear and the nuisance established, an injunction will always be granted to protest the right, as well as to prevent irreparable injury."

It is insisted, however, by appellants that the right to the relief by injunction in favor of appellees should have first been established by a proceeding at law. In other words, that the existence of the nuisance, as well as the interference by it with the rights of the appellees, should be determined by a trial at law. This contention cannot be maintained. It is denied by all modern authority, and whatever may have been the ancient rule when there existed great rivalry between courts of equity and courts of law, it is sufficient to say that the rule contended for has no modern authority, text writer or judicial utterance, in its favor when the facts are similar to those we have here. In the work on Nuisances to which we have referred, in section 785 upon this subject, it is stated:

"It is not necessary that the right should first be established in law in all cases, as if the right is clear and unquestioned and its violation is established or practically conceded, an injunction will be granted if the nature of the injury is such as would warrant an injunction after a verdict."

But it is a sufficient answer to this contention to say that in none of the cases emanating from this court has the doctrine contended for been applied, and wherever it is found to prevail there will also be found to exist the common law rules of procedure governing the practice in equity and ordinary cases, and not within jurisdictions having the character of code practice which prevails in this State.

A reversal is urged because it is claimed that some of the appellees "moved to this nuisance," but this posi-

tion likewise is untenable. In the work on Nuisances previously referred to in section 802 upon this subject, it is stated:

"Neither will the fact that when he erected his house no houses were near, but that the plaintiff has come *to* his works, in any measure operate to protect him, for he should have taken the precaution to purchase enough of the surrounding property when he built his works to prevent the possibility of such results."

Moreover, in the instant case, by far the larger per cent of the appellees were the owners of and occupying their premises long before the appellants commenced the operation of the quarry, and all were such before the character of acts enjoined were commenced.

It is likewise urged as a ground for reversal that the appellees are deprived of their remedy because of their laches. In other words, that by remaining quiet and by acquiescing, they are equitably estopped to make complaint; and as a further right to insist upon this defense, it is claimed that appellants expended a considerable sum of money in the investment of and equipment of their plant. The facts are that the tract of land upon which the quarry is located consists of about 45 acres, which cost appellants $2,000.00. They have spent for machinery something like $2.000.00 or perhaps $2,500.00. This machinery is from six to nine years old and can be easily and readily moved to any other place to which appellants might see proper to carry it. The land, of course, is still there and will remain there whatever may be the action of the court. Furthermore, the testimony in regard to the objectionable management of this quarry shows that the acts producing the nuisance complained of, and enjoined, do not grow out of the nature of the business, but grow out of the way and manner in which it is conducted, and that this particular way and manner has not been engaged in by appellants until the last few years preceding the filing of this suit. The conduct complained of is a thing which might, or might not, become a nuisance, dependent entirely upon the extensiveness of the blasting and the consequent noise and jarring resulting therefrom, and the molesting noise at night, and it is this manner of use which was sought to be and was enjoined. There is no such acquiescence of lashes shown as to deprive the plaintiffs of the injunctive relief.

Lastly, it is earnestly insisted that this court's opinion in the case of Louisville Coffin Co. v. Warren, *supra*, effectually bars the right of plaintiffs to maintain this action. The facts of that case and those in the present case are essentially different. The factory, the operation of which was sought to be enjoined there, had been operated in the same manner as it was being operated when the suit was filed for many years. The plaintiffs had stood by and had seen improvements placed upon the property without protest, and with full knowledge of the character of the intended operation, to the amount of $15,000.00, or more. It is stated in the opinion: "In this case the buildings had been erected, and a large expenditure made, amounting to $15,000.00 or $20,000.00. The business in which appellants are engaged is lawful. It is not shown that the health of the appellees or their families are affected by it, or that the atmosphere is rendered unpleasant except from the smoke at certain periods, when the wind is blowing in the direction of the appellees' house." Further on in the opinion, after recognizing that mere acquiescence in the existence of a nuisance for seven years, or more, will not prevent an individual from abating it, the opinion says: "Where one stands by and permits the erections of buildings, as in this case, and their use for the purposes for which they were constructed for seven years, it becomes very persuasive evidence that the injury complained of is such as is incidental to like improvements and common to the entire population on the square;" and still further on in the opinion it is stated: "We think, in a case like this, where the property has been used for the same purposes for a number of years, and expenditures made that, if rendered valueless, must result in the financial ruin of the owners, the application for an injunction must be sustained by strong and convincing testimony; in other words, a plain case of nuisance and with it irreparable injury, must be established." The differences between the two cases are, that the injunction granted herein does not render the appellants' property valueless, nor does it result in financial ruin to them. The continuous jarring and injury to plaintiff's houses render their occupancy unpleasant as well as, according to the testimony, unhealthful, and their annoyance is not governed by the shifting changes of the wind. Furthermore, it is shown in this case that the application for

the injunction is sustained by strong and convincing testimony and the nuisance, together with irreparable injury, is indisputedly established; especially so as to at least three of the appellees. Every citizen has a right to the free and unmolested enjoyment of the occupancy of his home, and included in this is the right to freedom from the consequences of any subtle influence being set in motion which interferes with this right, be it visible or invisible, and as the proof in this case shows, in addition to the casting of rocks upon the premises of some of the appellees, such forcible vibrations in the air were produced by the explosions as to cause the shaking and jarring of their premises, their rights incident to the enjoyment of the property were seriously and irreparably interfered with. The judgment in so far as it granted the appellees relief was proper. If, as appellees contend, they are not guilty of producing the noise at night complained of, then the injunction granted below upon this cause of complaint cannot affect them, for they cannot be in contempt for continuing to not do the thing that is enjoined.

Upon the cross-appeal but little need be said. We have seen in the course of this opinion that the nuisance must be thoroughly established by convincing proof. The injuries resulting from the operation of the rock crusher are not established by the character of testimony that we think the law requires in order to obtain the relief sought, and it, therefore, results that the denying of the relief to the appellants upon this ground was also proper.

It therefore results that the judgment appealed from should be, and is affirmed, and that the part of it called in question by the cross-appeal should also be, and is affirmed; all of which is so ordered.