### Sexton, et al. v. Youngkau.

(Decided February 26, 1924.)

### Appeal from Boyd Circuit Court.

1. Nuisance—Slaughterhouse Prima Facie Nuisance.—A slaughterhouse in a thickly populated community is prima facie a nuisance; and in an action to enjoin the maintenance of a slaughterhouse it was incumbent on defendant to show that his business was conducted in such a manner as not to constitute a nuisance.

2. Nuisance—Burden of Showing Slaughterhouse Not Nuisance Held Not Sustained.—In an action to enjoin maintenance of slaughterhouse and stock pen as a nuisance, held, that defendant did not sustain the burden imposed upon him to show that the stock pen was not a nuisance.

W. D. O'NEAL for appellants.

CLYDE R. LEVI and DYSARD & ADAMSON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

W. M. Sexton and wife brought this suit to enjoin Henry Youngkau from continuing to conduct his slaughterhouse and stock pen in such manner as to create obnoxious and offensive odors to the annoyance and discomfort of plaintiffs in the enjoyment of their property. The chancellor denied the relief prayed for and plaintiffs have appealed.

The Sextons are joint owners of a house and lot located in the city of Ashland at the northeast corner of

19th street and an alley which bisects the block lying between Greenup avenue and Front street. The property, which is about 100 feet from the intersection of 19th street and Greenup avenue, fronts on 19th street for a distance of 47½ feet, and runs back between parallel lines with the alley for a distance of 50 feet. The Youngkau property fronts on Greenup avenue and runs back to the alley. In the lower portion of the building facing on Greenup avenue, Youngkau has a small retail meat store, while the upper portion is used by him and his family as a residence. The slaughterhouse and stock pen are located on the rear of the property and adjacent to the alley and the Sexton property. The stock pen, which is six feet wide and twenty-two feet long and has a concrete floor, is about six feet from the Sexton residence.

According to Mrs. Sexton, the condition was very bad. Youngkau kept hogs in the stock pen as long as eight or ten days at a time, and then put in more without cleaning out the pen. At times the manure and filth were four or five inches deep. The odors were so bad that they could not raise their windows even in hot weather, and she and others were made sick at the stomach. J. T. Hunt, a former policeman, deposed that he was frequently in the Sexton residence, that the stench from the pen was so bad that he "could almost taste it," and that the odor from rendering tallow was almost unbearable. While he was policeman, he examined the hog pen and the filth was four or five inches deep and had been there for a long time. He could smell the odor in his sleeping room at the Sexton home, and it made him throw up several times. The odor was also noticeable from the street. Frank Maupin, who boarded with the Sextons, testified that the stench was such that the doors and windows had to be closed while they were eating their meals. W. M. Sexton testified to substantially the same fact as Mrs. Sexton and said that sometimes the odor was so bad that he would have to leave the table, and throw up before he could get out of the room. Dr. W. O. Eaton, who treated a sick boy in the Sexton home, said that the offal from the sheep, hogs and cows was in the pen, that the filth which had accumulated for two or three days produced an offensive odor that was noticeable in the upstairs room and was very disagreeable. Virgil Sexton testified to the same conditions, and further stated that while he was sick, the windows were opened to give him fresh air and that the air was foul.

J. H. Hunt stated that he had seen the pen full of filth and that it smelled terribly bad. He had smelled the odors not only in plaintiff's house, but in his own home. R. B. Paine, the chief of police, testified that he was called to the Sexton home by Mrs. Sexton and saw the entrails of stock in the pen. He saw other filth there the day before. Helen Marcum testified that she smelled the terrible odor when on plaintiff's porch, and could not see anything about the Sexton home to create such odor. Flora DeFore testified that she smelled an awful odor and had to close her doors, that she could smell it in her house with the doors closed. It was worse on rendering days. The odor came from the pen and rendering house. J. S. McPete testified that he saw filth piled up in the pen and the odor was offensive. Robert Kelley, who boarded with the Sextons, said that some days he had to leave the table on account of the hog pen. The smell was worse in warm weather. The odor from the tallow was also bad. On the other hand Youngkau testified that the slaughterhouse and stock pen were modern in every respect, were built wholly of stone and brick with concrete floor, and were completely equipped with adequate facilities for cleaning and sanitation. He further stated that he was under government inspection, and was forced to keep his place clean in order to ship meat from one place to another. He further stated: "We have a hose to clean our pens and we have it scrubbed every day in the week when we do any killing, and when we don't we clean the pen some two or three times every week whether we do or not, and we have a concrete floor in there." He also added that he never heard of any obnoxious stench or smell there. Tim Haney, who owns property on Greenup avenue adjoining the Youngkau property, and who has resided in that location fifteen years, testified that the slaughterhouse and stock pen were clean; that though his windows opened within five feet of the slaughterhouse and he had frequently passed up the alley, he had never noticed any offensive odor from the premises. E. D. Raffel, who had also lived in the Haney property adjoining the Youngkau property, testified that he had been in the slaughterhouse often and in the stock pens once or twice, and had also been up and down the alley; that the slaughterhouse was in first class condition, and that the stock pen, when he saw it, was "pretty clean." During the two years that he lived in the Haney property, he himself was not

troubled with any stench from the slaughterhouse or pen. He further testified that he was a member of the Jewish Association, and on the committee charged with selecting the place for the purchase of meat, and Youngkau's meat shop was selected on account of its sanitary condition. Will Slate, a witness introduced by the Sextons, testified that he also lived for two or three years immediately adjoining the Youngkau slaughterhouse, and closer than the Sextons, and had never noticed any bad odors from the Youngkau property; that he had been in the slaughterhouse and stock pen, and always found the same in a clean, sanitary condition. J. P. O'Neal, who lives on the west side of 19th street, and almost opposite the Sexton property, testified that he had never noticed any odors from the Youngkau property, and that Youngkau's slaughtering plant had modern equipment and was kept in a sanitary condition. William Donohue, employed by the federal government as inspector of the bureau of animal industry, testified that he had frequently visited the Youngkau establishment for the purpose of inspection. After describing the equipment, he stated that he found the slaughterhouse in good condition, and the pens "always clean except when containing cattle, stock or hogs." He had been there when they butchered and they always cleaned and washed the place thoroughly. He added that the Youngkau slaughterhouse and stock pen were above the average. As a general thing, the yard was in good condition. Sometimes he had a few scraps in there. He never found the manure deep. If cattle stayed in the pen three or four days longer, the manure and offal certainly would gather on the floor. In that case the odor might be "repulsive," but he did not know about its being "offensive." Lewis E. Goodman and George Strauss also testified that they had been in the slaughterhouse and stock pen many times, and always found them in a clean, well-kept condition. There was further evidence to the effect that there was an old fashioned double toilet located on the Sexton property with no facilities for flushing or cleaning; that the alley adjoining the Sexton property was not paved, and was used by persons for the deposit of garbage and other refuse, and that there was a bad odor from a large gas main which furnishes the steel plant gas for its operation.

It is the rule in this state that a slaughterhouse in a thickly populated community is *prima facie* a nuisance,

Seifried v. Hays, etc., 81 Ky. 377, and that being true, it was incumbent on appellee to show that his business was conducted in such manner as not to constitute a nuisance. Appellee did prove by himself and other witnesses who occasionally passed by or visited his premises that his plant was well equipped and constructed in a sanitary manner, and that no offensive odors came therefrom. In describing what he did he said: "We have a hose to clean our pen and we have it scrubbed every day in the week when we do any killing, and when we don't we clean the pen some two or three times every week whether we do or not, and we have a concrete floor in there." The government inspector, though testifying that he always found the plant in a sanitary condition, added that pens were always clean except when containing cattle, stock or hogs. Opposed to this evidence is that of several witnesses who lived or boarded in the Sexton residence or who had occasion to visit the premises. According to them the conditions were very bad, and the occasions were quite frequent when the pen was not only in a filthy condition, but the odors therefrom were so offensive as to make people sick. In view of the presumption that the slaughterhouse was a nuisance, and of the practical admission of the government inspector that the pen was not clean when occupied by cattle, hogs or other animals, coupled with the positive evidence of those who were in a position to see and know the actual conditions from day to day, we are constrained to the view that the burden imposed upon appellee was not sustained. In reaching this conclusion we have not overlooked the surrounding conditions or the fact that the neighborhood was not altogether free from other odors. However, on the showing made, we are of the opinion that appellants have no just ground to complain of that portion of the plant other than the stock pen, and for the present an injunction will go restraining appellee from conducting the stock pen in such manner as to produce offensive and noxious odors, but if it should be made to appear that this cannot be done, the chancellor will then enjoin all further operation of the stock pen.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.