## HUFF v. LETSINGER et al.    (No. 3033.)

Court of Civil Appeals of Texas. Amarillo.
May 16, 1928.

Rehearing Denied June 6, 1928.

1. Nuisance ⊜⟷3(10), 4—Slaughterhouse is prima facie nuisance, which may be enjoined in advance of operation, if evidence shows conduct thereof will constitute nuisance.

Slaughterhouse is prima facie nuisance, and court, if convinced after hearing all of evidence that it cannot be conducted without constituting nuisance, may enjoin it in advance of actual operation.

2. Nuisance ⊜⟷33—Judgment enjoining construction of slaughterhouse and digging of cesspool, as nuisance affecting nearby residents, held not improper, under evidence.

Trial court's judgment enjoining defendant from erecting slaughterhouse and digging cesspool and from using property as place for slaughtering animals, on ground that operation of slaughterhouse would constitute nuisance as to nearby residents by causing pollution of water supply and obnoxious odors and noises, held not improper, under evidence, though property was located outside city limits.

Appeal from District Court, Potter County; W. E. Gee, Judge.

Suit by J. H. Letsinger and others against Frank Huff. Judgment for plaintiffs, and defendant appeals. Affirmed.

Cooper & Lumpkin, of Amarillo, for appellant.
S. E. Fish, of Amarillo, for appellees.

HALL, C. J. The appellee J. H. Letsinger, joined by five other home owners, instituted this suit against the appellant to restrain him

from erecting a certain building and improvements upon lands owned by him, upon the ground that, when such buildings and improvements were erected and used by him for the purpose of slaughtering cattle, hogs, and other live stock, a nuisance would be created.

The plaintiffs alleged that they resided upon certain subdivisions of sections 159 and 166, block No. 2, of the A. B. & M. surveys in Potter county; that a portion of survey No. 166 had been subdivided into tracts of five acres for the purpose of selling said tracts for homestead purposes; that appellee Letsinger owned tract No. 1 and that the other appellees owned adjacent or contiguous tract No. 2, etc.; that the property owned by appellees had been used by them as their respective homes for a number of years and had been improved for such purposes; that the lands in the vicinity were being developed and sold for residence property, all of it being situated north of the corporate limits of the town of Amarillo, in what is known as the shallow water belt; that the appellant owned one five-acre tract, on which he is building a slaughterhouse and digging a cesspool to be used in connection therewith; that said improvements were situated near a draw upon higher ground than the tracts of land owned by the several appellees. Appellees charged that the operation or maintenance of a slaughterhouse with its cesspool, as was being constructed by appellant, would constitute a nuisance, in that their wells would be injured and the health and comfort of their families impaired; that they would be constantly exposed to disease and offensive odors, which would render their homes unsafe and uncomfortable; that a large number of cattle and other live stock would be slaughtered by appellant daily and will result in polluting the water in the appellees' wells; that it will be a menace to the health of appellees and their families and detract from the appearance of their property and materially damage them in the value thereof.

It is specially alleged that the homes of the appellees are situated in what is known as the shallow water belt, and that water can be reached on several of the tracts of land in question at a depth of 25 feet, and that they use the water from wells for drinking and household purposes; that there is a creek or draw which flows from the slaughterhouse in a northeasterly direction across several of the tracts of land owned by the several appellees; that the cesspool is about 20 feet in depth and about 20 feet from the bed of the creek; that the operation of the slaughterhouse and cesspool in said shallow water belt adjacent to the stream of water will pollute the subterranean streams which supply the wells, rendering the water unfit and unsanitary for drinking purposes, and that the rainwater or surface water flowing from said

slaughterhouse and vicinity would soak through the soil, overflow appellees' land, and come in contact with the subterranean streams supplying the water wells owned by the appellees; that the slaughterhouse and cesspool are less than 1,000 feet from one of the public school buildings of Amarillo, where several hundred children attend school during the school terms; that the water supply of said school is one of the wells which will be polluted; that the bringing of hogs, cattle, and other live stock to be slaughtered will attract flies, result in the spread of germs, and unhealthy conditions will result; that the noises made by said stock while being driven to the pens and while in the pens and being slaughtered will be seriously offensive to the comfort of appellees and result in great injury as well to the values of the surrounding property.

They further allege that they have no adequate remedy at law, and, unless appellant is restrained, he will complete the erection of the slaughterhouse and dig the cesspool to their great damage.

In answer to the appellees' petition, appellant, Huff, demurred generally, set up a general denial, and specially alleged under oath, that he had purchased the five-acre tract of land which is not located in close proximity to any residence, for the purpose of erecting an abattoir thereon; that, at great expense, he had constructed and was now constructing an abattoir thereon in the most improved manner and form, and in keeping with all the requirements of the state law; that he will conduct his business thereon in keeping with the most modern and improved method, to such an extent that there would be no stinks or odors arising therefrom that would annoy people passing or living in the vicinity of said property when same was completed; that said abattoir was being constructed to furnish meat to the numerous markets which appellant owns in Amarillo, to be sold to the citizenship of said city, and that, in the construction and maintenance of same, it will be, at all times, subject to the constant inspection of the proper authorities of said city and will be run so that same will not injure or destroy any one's property or rights; that the same is not now a nuisance and will not be operated so as to become a nuisance.

The court heard the proof without the intervention of a jury, and rendered judgment perpetually enjoining the appellant from erecting a slaughterhouse and digging the cesspool upon said tract No. 2, and from using the property as a place for slaughtering animals.

The case is before us upon the three following propositions:

(1) A slaughterhouse not located in a city or town is not a nuisance as a matter of law, nor is a slaughterhouse so located a nuisance per se.

(2) The owner of land has a right to use the same, and for such purposes as he may see fit so long as such use does not impair or destroy the rights or property of another.

(3) The erection of a slaughterhouse and the operation of same not in a city or town, but upon urban property, is a lawful business and cannot be enjoined on the ground that the same may become a nuisance. Hence the judgment of the court restraining appellant from erecting and operating a slaughterhouse upon tract No. 2 of the Weymouth subdivision of section No. 166 is erroneous.

The trial judge filed no finding of fact and the foregoing propositions simply raise the question whether the evidence supports the judgment. The trial court did not hold that the proposed erection, maintenance, and operation of a slaughtering plant would be a nuisance per se, but, after hearing the evidence, held that it would constitute a nuisance which should be enjoined.

The testimony shows that the appellant owns about five acres of land upon which his slaughterhouse and cesspool are in course of construction, and he stated that he intended to use all of the property for confining animals to be slaughtered; that he is the proprietor of several meat markets in the corporate limits of Amarillo, and, at present, was slaughtering about ten animals per day, and, as the demand increased he would slaughter a greater number of animals; that his property is about three miles north of the corporate limits of the city of Amarillo.

The evidence further shows that the plaintiffs have purchased two and a half and five acre tracts of what is known as the Weymouth subdivision of section 166, and that most of the lots in that subdivision have been sold; that there are 20 residences within a quarter of a mile of the site of the slaughterhouse, 50 residences within a radius of a half a mile, and about 125 residences within a radius of a mile; that there is a schoolhouse about 600 feet from the slaughterhouse, which is attended by several hundred pupils during the school term; the slaughterhouse is situated upon higher ground than the property owned by the plaintiffs; and that the soil in that vicinity is sandy and porous. The testimony is that plaintiffs and others in that vicinity, including the schoolhouse, get their water from wells which are from 25 to 80 feet deep, and that the water is found in a stratum of coarse sand, and is called sheet water, as it does not flow in veins. The drainage is from the slaughterhouse, northeasterly down the draw or dry bed of the creek, to a lake which rarely ever goes dry; that the premises in question are situated west of the paved highway known as the river road, running north from Amarillo, and that in driving cattle, hogs, and other live stock to be slaughtered, these animals are driven past the residences of some of the plaintiffs.

Several witnesses testified that the impurities and refuse from the slaughterhouse and

the stock pens would be washed by rains down this draw and across the premises of some of the plaintiffs, and that impure water would soak into and through the porous soil down to the stratum of sand, from which the community obtained water for drinking and household purposes.

This testimony is not contradicted, nor is it contradicted that the construction and operation of the slaughterhouse at that place would materially reduce the market value of the surrounding property for home purposes; that the odors and noises incident to the operation of such a plant would seriously affect the comfort and convenience of the occupants of the surrounding homes.

Quincy Ford, who lived across the river road from this community, said that there had been slaughterhouses in his neighborhood before; that he had one on his land several years ago and it became a great nuisance; that he ran it himself for a while, butchering some live stock which he owned; that he took the best care of it he could, and yet it became obnoxious to the people living on the place 300 or 400 feet away, until he quit butchering there entirely; that he had leased his slaughterhouse to two or three other parties, and it was so obnoxious and offensive that he refused to lease it any more and did away with it entirely; that it is a great nuisance for another reason, that in bringing cattle and other live stock to the place where they are going to be butchered, as they get near the slaughterhouse they smell the blood and seem to go crazy and get scared and run through the fences in an effort to get away; that one of the great objections to that slaughterhouse was the live stock kept his fences torn down.

It appears that some of the plaintiffs called on the appellant soon after he commenced the erection of his slaughterhouse, in an effort to get him to desist, but failed.

The evidence shows that the cesspool will be about 20 feet deep, and that the soil from the bottom of the cesspool down to the stratum of sand from which the plaintiffs obtain their water is very porous, and that the more water they pump from the wells the stronger will be the flow of impure water from the premises upon which the slaughterhouse is situated.

The testimony of appellees' witnesses is to the effect that the operation of the slaughterhouse in that neighborhood would not only jeopardize the health of the people in that neighborhood, but would render living there uncomfortable and unpleasant, making their homes less enjoyable. The appellant testified that he expected to keep cattle and hogs on the five-acre tract preparatory to slaughtering them and would fence the whole five acres for that purpose.

"Slaughterhouses have been declared to be within the class recognized by law as, in their nature, nuisances. They were originally regarded, when located in a city or town, as nuisances per se, and have been held to be such in somewhat recent cases. According to the weight of authority, however, slaughterhouses are now regarded as prima facie nuisances. A slaughterhouse which, by reason of its location or the manner in which it is conducted, affects a person's health or renders his enjoyment of life physically uncomfortable, or materially injures his property, will constitute a nuisance which may be enjoined." Joyce on Nuisances, §§ 126, 127.

[1, 2] We have concluded that while it is the general rule that the courts will not, in advance of operation, enter a decree perpetually enjoining them, when the business attacked is such as a gin, livery stable, garage, and the like, yet the fact that a slaughterhouse is prima facie a nuisance would authorize the court to enjoin its construction, if, after hearing all of the evidence, he is convinced that the defendant will not or cannot conduct it so that it will prove not to be a nuisance.

The trial court having found, from all the evidence, against the defendant, we do not feel warranted in setting the judgment aside. 27 A. L. R. 331; Sexton v. Youngkau, 202 Ky. 256, 259 S. W. 335; Conway et al. v. Gampel et al., 235 Mich. 511, 209 N. W. 562; 29 Cyc. 1181, § 104; Burditt v. Swenson, 17 Tex. 489, 67 Am. Dec. 665; Grant v. Rosenburg, 112 Wash. 361, 192 P. 889, 196 P. 626; Robinson v. Dale, 62 Tex. Civ. App. 277, 131 S. W. 308; Hall v. Carter (Tex. Civ. App.) 157 S. W. 461; Hockaday v. Wortham, 22 Tex. Civ. App. 419, 54 S. W. 1094.

The judgment is affirmed.