## Rogers v. Gibson et al.

(Decided Jan. 19, 1937.)

DODD & DODD for appellant.

THOMAS W. BEALE for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

In September, 1935, the appellant, Ralph Rogers, doing business as the Louisville Crushed Stone Company, opened and began operating a quarry just outside the city limits of Louisville. The neighborhood is not thickly settled, but seems to be laid off in streets and may be regarded as urban territory. The appellees are property owners and residents close to the quarry. All are within the area of a city block. They brought this suit against appellant seeking a permanent injunction against conducting the quarry and blasting operations in a manner that would cause the shaking of their buildings, the casting of stones upon their premises, or impairing the value thereof. The court adjudged ''that Ralph Rogers, trading and doing business as the Louisville Crushed Stone Company, and his agents, servants and employees, and each of them, are hereby perpetually enjoined from discharging or permitting to be discharged such blasts of dynamite or other explosives in the operation of the quarry owned by the defendant, Ralph Rogers, and referred to as the Louisville Crushed Stone Company, and operated by said defendant, as would jar the dwelling houses or other buildings of any of the plaintiffs herein to such an extent as would interfere with the comfortable and reasonable enjoyment of their homes or houses; or to cause said houses, or any of them, to vibrate or shake; or to cause the plastering or other coverings of the walls or ceilings in any of said houses to crack or fall or be in any other way damaged; or to cause the foundations of any of said houses to crack or be damaged; or to cause the concrete sidewalks to any of these said houses to crack or be in any way damaged; or to cause other injury to any of such houses.''

The overruling of the special and general demurrers to the petition is pressed as error. The petition describes that the blasting had been, and would be, done by exploding ''large and extensive quantities of dynamite and/or other high explosives,'' and alleges, in substance, that the operations had caused the plaintiffs' houses to be shaken ''as by an earthquake''; to crack the walls and plasterings of some of them; to break the foundations of other houses; to throw large stones

upon the premises of the plaintiff Snyder, making the same dangerous for occupancy, which it is charged was "by wrongful and negligent acts". and to shake the ground of all the plaintiffs, thereby damaging and endangering the same and making their property unsafe for occupancy as well as impairing its value. It is further alleged that the plaintiffs had repeatedly protested those acts of the defendant, his agents and employees, without avail.

As to the special demurrer, it is submitted that since there is no allegation of an actual invasion of the property of any of the plaintiffs except Snyder, they were improperly joined with him; that he has an adequate remedy at law for trespass, and a court of equity has no jurisdiction of his cause. The throwing of stones in blasting operations is but one character or element of invasion of property rights. Although there is an actual trespass in that way, it has long been held that equity does have jurisdiction and that an injunction against repetition will be granted. Section 22, Civil Code of Practice, provides that all persons having an interest in the subject of an action and in obtaining the relief demanded may be joined as plantiffs, unless otherwise provided. The right of joinder in a similar case was sustained in Barrett v. Vreeland, 168 Ky. 471, 182 S. W. 605. To the same effect is Louisville & N. R. R. Co. v. Franklin, 170 Ky. 645, 168 S. W. 643.

As to the general demurrer, it is pointed out that there is no allegation of negligence in any other particular than in throwing stones on Snyder's property and no specific reference to the facts charged as constituting a nuisance. It was not necessary that the acts complained of should have been due to negligence. The right of an injunction against the continuance of the use of one's own property in a way that damages the property of another or disturbs him in its possession, so as to render its ordinary use or occupancy physically uncomfortable, is based upon the conception or classification of nuisance. Kentucky-Ohio Gas Co. v. Bowling, 264 Ky. 470, 95 S. W. (2d) 1. A nuisance may exist either with or without negligence. As is stated in 46 C. J. 663:

> "While a lawful thing or act may be a nuisance by reason of its negligent use or operation, a nuisance

is a condition, and not an act or failure to act of the person responsible for the condition. As a general rule, negligence is not involved in nuisance actions or proceedings, and is not essential to the cause of action. If a particular use of property causes a nuisance this fact is sufficient to entitle a person injured thereby to relief. If a nuisance exists, the fact that due care was exercised and due precautions were taken against the annoyance or injury complained of, is no excuse. The fact that the defendant has used the ordinary means to avoid the nuisance complained of which are used in general by others engaged in the same business is no defense. A nuisance may be created or maintained with the best or highest degree of care.''

A hundred and ten years ago an illustrative declaration that a series of acts described in a pleading need not be named entered into the opinions of this court. It has been frequently repeated. In Prewitt v. Clayton, 21 Ky. (5 T. B. Mon.) 4, the petition charged that the defendant ''with force and arms, upon the dwelling house of the said plaintiff, did make an assault,'' ''and then and there, with clubs, stones and other implements, did violently stone, shatter and break down the door of the said plaintiff's house aforesaid, and other violences and enormities.'' In answer to the argument that the plaintiff had not declared for a trespass quare clausum fregit, nor alleged that the defendant broke and entered the close, the court said: ''It was unnecessary after stating the facts which constitute a trespass quare clausum fregit, to call the trespass by its name. A Bear well painted and drawn to the life is yet the picture of a Bear, although the painter may omit to write over it, 'this is the Bear'.'' So the failure here to name the described operations of the defendant's quarry as being a nuisance does not make it any the less such. The allegation of the facts was sufficient.

It seems to us, therefore, that the rulings on the demurrers were proper.

In summary, the plaintiffs' evidence proved that from time to time blasts in the quarry caused the vibration of the ground; the shaking of buildings for a distance of a half mile or more; the cracking of walls or foundations in a more or less degree; the displacement

of pavements; the breaking of stucco; the rattling of windows; the jarring and opening of doors; the rattling of dishes, sometimes shaking them from the shelving; the destruction of aquariums, and the stopping of electric clocks and radios. Former employees of the defendant testified that they had used from 50 to 250 pounds of dynamite in a blast and on one occasion had used as much as 400 pounds. Incompetent or careless men had been in charge until a short time before the suit was filed. In a word, there were frequent miniature earthquakes caused by the defendant to the plaintiffs' damage. Complaints had produced no results.

The evidence of the defendant was to the effect that the quarry had been prudently operated; that excessive quantities of dynamite had never been used; that there were no substantial vibrations; that the company's office in an old building about 400 feet away had never been affected. Two close residents testified that they had not been disturbed and had not suffered any resulting bad effects. A representative of a company which had sold explosives to the defendant testified to the manner and extent of the blasting as he had frequently observed it, and declared as an expert it would not cause the effect claimed by the plaintiffs. Upon one occasion when the United States Government was experimenting with some explosives in the quarry, he had stood at a nearby building and it was not affected. About a week before he gave his testimony he had tested the effect of blasting in this quarry with a seismograph, which he described as being a series of eight pins, four to sixteen inches long, with hemispherical ends, set upright on a glass plane. A slight vibration will cause the longer or taller pin to topple or fall, and a greater shaking will knock down the shortest. This instrument had reflected no degree of vibration at the experiment. Of controlling importance in considering this evidence is the fact that the witness did not know how much dynamite had been exploded on either occasion.

In appraising the proof the chancellor trenchantly wrote:

"The best test of cause is effect. I remember an aerodynamic lecture by a recognized authority whose bluntness and wit made for clarity. Speak-

ing of fallibility in projecting flight performance by instrument test he said: 'Take the bumblebee. Apply to him the recognized aerodynamic tests. From the size, shape and weight of his body, in relation to total wing area, he cannot possibly fly. But the bumblebee does not know this, and he goes ahead and flies anyway.' Results, tho not infallible, are the best test."

It seems to us the evidence established much more than trifling and sporadic invasions of the plaintiffs' rights and proved a sufficiently strong case of probability that the apprehended future mischief would in fact arise.

True it is that there was no actual invasion of any of the plaintiffs' premises as by throwing rocks thereon. And this court has been aligned with the minority in holding that there is no liability for damage to neighboring property from concussion, vibration, or jarring in the absence of direct trespass or physical invasion so long as the operations are conducted with due care and without negligence. Williams v. Codell Construction Co., 253 Ky. 166, 69 S. W. (2d) 20, 92 A. L. R. 737. But in Kentucky-Ohio Gas Co. v. Bowling, supra, it was held that an action for damages would lie for injuries to property sustained through vibration caused by gas pressure pumps regardless of direct trespass. However, there is no claim for damages asserted in this case. We are dealing with a matter of equity—the granting of an injunction to restrain the causing of jarring and vibration of plaintiffs' property. We are dealing with the abatement of a nuisance—not with damages caused by negligence. Under the conception of there being no basis for a remedy at law because of the absence of physical trespass, so much more should the restraining arm of the chancellor be put to use. It has never been held that an injunction should not be granted under such circumstances.

The subject is fully treated in Barrett v. Vreeland, supra, where the operations of a quarry in Frankfort jarred neighboring property and disturbed the comfort of the occupants. As was shown here, it was shown there, that many plaintiffs joined in the proceeding and only the houses of some of them had had stones cast thereon. That exhaustive opinion is ample authority for

the judgment in this case. Cf. Wheat Culvert Co., Inc., v. Jenkins et al., 246 Ky. 319, 55 S. W. (2d) 4.

We can see no basis for on objection to the injunction granted. It merely stops such use of the defendant's property as may damage the plaintiffs. All men must agree that no one has a right to do that. If, as the defendant contends, the prudent operation of his quarry has not caused such damage or interference with the enjoyment of plaintiffs' property, then the continued prudent operation will not violate the injunction.

The judgment is affirmed.