## C. Rice Packing Co. v. Ballinger et al.

September 27, 1949.

William E. Wehrman and E. H. Walton for appellant.
James E. Quill, Stanley Chrisman and John L. Cushing for appellees.

JUDGE KNIGHT—Affirming.

Appellees, seven in number, including the city of Covington, brought this suit against appellant, C. Rice Packing Co., hereinafter designated as the Company, to enjoin it from operating its slaughter house and meat packing plant in such manner as to make it a nuisance and requiring it to abate the nuisance complained of. The petition sets out numerous acts which it alleges constitute the nuisance complained of. In its answer the defendant denies that it operates its plant in a manner to create a nuisance but alleges that it operates it in accordance with approved and modern methods for the operation of such plants and prays that plaintiffs' petition be dismissed. With the issues thus made up considerable proof was taken and upon submission of the case the Chancellor, after giving his reasons therefor, entered a judgment perpetually enjoining and restraining defendant "from operating its plant in such manner as would create, cause, or suffer offensive odors to invade the homes of the plaintiffs or to cause such noises as would interfere with the quiet enjoyment of their homes." It is from this judgment that this appeal is prosecuted.

### Facts in the Case.

The appellant Company has been operating a slaughter house and packing plant in the city of Covington for many years and at the present location at Patton and Eastern Avenue for approximately twenty-five years. During all this time, until recent years, the Company has slaughtered at its Covington plant, cattle only. All hogs slaughtered by the Company were slaughtered at its plant in Maysville, Ky. until that plant was destroyed by fire some four or five years ago, since which time both hogs and cattle have been slaughtered at the Covington plant. It is this fact which appears to have given rise to the increased noise, dirt and odors of which appellees complain as the basis of this injunction suit. From 75 to 100 hogs are slaughtered each day three or four days out of the week and from 40 to 60 cattle each

working day. After the killings the offal, which includes fat, bones and the intestines from both hogs and cattle, is placed in a cooker or rendering machine, called a melter, about five feet by twelve feet and with a capacity of 10,000 pounds. By steam pressure applied to the jacketed melter, but without the steam coming in contact with the contents, the mass of offal is melted or rendered. The resulting grease is pressed out in an expeller and becomes tallow which is sold to soap manufacturers. The cracklins and other protein residue are sold as stock food, principally for chicken feed. During the rendering process the melter is tightly closed and the steam which is forced around the jacket is carried to the roof of the building into a condenser where it is converted back into water and passes off through the city sewer. In preparing the intestines for the cooker the contents of the intestines of both hogs and cattle are forced out and all this fecal matter, blood from the slaughtering rooms and other waste matter are flushed into the city sewer and the intestines, cleaned of this matter, are washed before being placed in the melter.

According to appellant's evidence this whole operation, the bringing in of the livestock, the slaughtering of the animals, the rendering of the offal and the disposal of the other wastes, is conducted in the most efficient and approved manner and in such a way that there should be and is no odor of any consequence from its plant, only such normal odors as would come from any well conducted slaughter and packing house; that the Company uses chemicals in the rendering process designed to kill all odors that might result from that operation and that the equipment used in its rendering process is of the approved type for that purpose. Appellant introduced in its behalf some half dozen witnesses consisting principally of salesmen and equipment service men who call on the Company, retail butchers who bought from it and employees who worked for it, all of whom testified that in their visits to the plant or while performing their work in and around the plant they detected no unusual odors emanating therefrom; that the place was kept clean and compared favorably with any other packing plant in the Greater Cincinnati area with which they were familiar. Dr. Ward, veterinarian in charge of Federal Meat Inspection in the Cincinnati district, testified that during the late war

when appellant Company operated under Federal Meat Inspection laws, its operations were being carried on in a proper manner so as to meet all Federal requirements; that it no longer operates under Federal Inspection laws and he no longer inspects it; that he has visited it once unofficially within the past six months before he testified and that so far as he was able to determine the plant was operating in a clean and sanitary manner and compared favorably with plants that operate under Federal Inspection.

Over against this evidence produced by appellants is the testimony of some twenty-five witnesses produced by appellees, including the parish priest of that district, the individual plaintiffs, some officials of the city and others living in the neighborhood. Without detailing all this testimony all of it is in substantial agreement that almost constantly there emanates from the slaughter house unpleasant and obnoxious odors, squeals and other noises from animals being slaughtered and that manure, from trucks bringing stock to the plant, falls onto the sidewalks and in general they picture an unsanitary condition resulting from the plant as it was being operated. Some of the words and phrases used by the witnesses in describing the odors were "unpleasant—obnoxious—very bad—sickening—hard to describe—a sewer could not smell worse—not very pleasant—cannot mistake an odor like that—bad odor—uncomfortable—awful—nauseating—so strong you could hardly stand it—makes you sick at the stomach—terrific—very, very strong—it turns my stomach—most ungodly smell—unbearable—never smelled an odor like it—terrible—horrible—so bad I could not sleep—has made me nervous—revolting—vile—it gags you—it just stinks terrible—don't know what it smells like—hard to explain—like burnt meat or flesh—foul—nasty odor—like manure—smells worse than burnt hair—disgusting," etc., etc. Although different witnesses testified that the obnoxious odors could be detected at different times during the day and night they were in substantial agreement that they are worse at times than at others and better or worse dependent on wind direction and atmospheric conditions.

From a careful reading of all the testimony we think it is fairly established that from some condition in the slaughter house, whether it is from the rendering of the offal, the disposition of the waste matter by way

of the sewers, or from some other unknown cause, there emanates from this plant foul and obnoxious odors which makes living near it unpleasant and unhealthy. In spite of appellant's evidence that the latest approved methods are used in the rendering process and therefore no odors can emanate therefrom we have here preponderant evidence that such odors *do* emanate from the plant. As was said by this court in another nuisance case, Rogers v. Gibson, 267 Ky. 32, 101 S. W. 2d 200, 202, in quoting the trenchant language of the Chancellor below: " 'The best test of cause is effect. * * * "Take the bumblebee. Apply to him the recognized aerodynamic tests. From the size, shape and weight of his body, in relation to total wing area, he cannot possibly fly. But the bumblebee does not know this, and he goes ahead and flies anyway." Results, tho not infallible, are the best test.' "

It does not seem reasonable that this parade of witnesses would testify as to those conditions if they did not exist and if they were not affected by the odors and noises of which they complain. If the burden was upon appellees to show that conditions existed which constituted the nuisance complained of they sustained that burden with a preponderance of evidence. In the case of Sexton v. Youngkau, 202 Ky. 256, 259 S. W. 335, 337, which was a slaughter house nuisance case, this court said: "It is the rule in this state that a slaughter-house in a thickly populated community is prima facie a nuisance, Seifried v. Hays, etc., 81 Ky. 377, 50 Am. Rep. 167; and that being true, it was incumbent on appellee to show that his business was conducted in such manner as not to constitute a nuisance. * * * In view of the presumption that the slaughter house was a nuisance * * coupled with the positive evidence of those who were in a position to see and know the actual conditions from day to day, we are constrained to the view that the burden imposed upon appellee was not sustained."

We think the Chancellor was justified in his findings of fact from the evidence that the conditions complained of did exist and which justified his issuance of the injunction if he had the authority to do so under the law, which point we will next consider.

## The Applicable Law.

The law of this case appears to be well settled in

this state. Among the grounds urged by appellant for reversal are that appellees have no right to bring a suit of this character and that if it is a nuisance it is a common or public nuisance and such nuisance can be abated only by a suit of the Commonwealth. Another ground is that many of the appellees moved into the community or moved back into it after once leaving it, long after appellant's slaughter house was in operation, and knew the conditions into which they were moving and could therefore not complain. In other words, that the court should consider a priority of occupation by appellant in determining whether an injunction should issue, thus invoking the "coming into a nuisance" doctrine as a defense. Both these questions were answered adversely to the contention of appellant in the case of Seifried v. Hays, 81 Ky. 377, 5 Ky. Law Rep. 369, 50 Am. Rep. 167. That case is so nearly on all fours with the case at bar that the opinion therein, written by Judge Pryor in 1883, could well be adopted as the opinion in this case. There, as here, appellees, five in number, brought suit to enjoin appellant from so conducting his slaughter house as to give off offensive odors and stench which they claimed was injuriously affecting the health of their families and impairing the comfort of their homes causing them irreparable injury. Appellant in that case had erected his slaughter house on an eight acre tract in the outskirts of Louisville and had been operating it for more than twenty years for the slaughter of cattle and hogs, and his defense to the action was that he was so engaged prior to the time appellees had erected their homes or moved near to his slaughter house; that his business had always been conducted in a lawful way, his establishment always clean and emitted no vile or foul odors, and that the acquiescence for many years in the manner in which he had conducted his business estopped appellees from interfering with the conduct of his establishment. The reasons given by this court for denying this contention are fully set out in the Seifried case and will not be repeated here. In that case the court analyzes and distinguishes the case of Louisville Coffin Co. v. Warren, 78 Ky. 400, the opinion in which was also written by Judge Pryor, relied on by appellant in the Seifried case and by appellant in the case at bar and its application to the facts in the Seifried case was denied, as we think it must be denied in the instant case.

Other cases upholding the principle that "moving to the nuisance" is no defense to an action to abate it are Barrett v. Vreeland, 168 Ky. 471, 182 S. W. 605, 606, one of the leading Kentucky cases on nuisance, and Hall v. Rudde, 293 Ky. 436, 169 S. W. 2d 33, which case carries a full annotation on this question in 167 A. L. R. 1361. Under these authorities we think it is no defense that some of the appellees moved into the neighborhood of appellant's plant after it had been established and operating for many years. It is still the duty of appellant to so conduct its operations as not to interfere with appellees' use and enjoyment of their homes.

On the other question raised by appellant, that appellees have no standing in court but that the nuisance, if any exists, can only be abated in a suit by the Commonwealth, was decided adversely to appellant's contention, not only in the Seifried v. Hays case, supra, but also in the case of Barrett v. Vreeland, supra, which was an action by individuals to enjoin a public nuisance, in that case a blasting operation. Their right to do so was upheld against the contention of the defendant that only the Commonwealth could bring such suit, the court saying (168 Ky. 471, 182 S. W. 608): "It is not denied that where private citizens suffer peculiar injury apart from that of the general public from nuisances, they may maintain their action in equity to abate it, although the public, through the Attorney General or the commonwealth attorney, may also have the right to proceed in the name of the commonwealth to abate the nuisance."

We think there can be no question in the case at bar but that the appellees, who are citizens living near the slaughter house of appellant and therefore subject to peculiar injury apart from the general public, have the right to maintain this action to enjoin the nuisance even if they had not been joined in the suit by the city of Covington which also seeks to abate the nuisance as a public nuisance under the provisions of its charter KRS 84.210 and .220, and ordinance No. 2739. This does not interfere with the right of the Commonwealth to proceed against appellant Company by indictment and indeed it is shown in the record that an indictment is pending in the Kenton Circuit Court against appellant Company for maintaining and operating a public nuisance.

## Conclusion.

Appellant contends that the judgment appealed from will close the doors of this establishment forever. We do not anticipate such a result. It will be seen from the excerpt from the judgment quoted in the first part of this opinion that it merely enjoins appellant from operating its plant in such a manner as to cause offensive odors or noises to emanate therefrom as would interfere with appellees' quiet enjoyment of their homes. The court refused to enjoin the appellant from operating its packing plant. All that is required is that it do so in a manner that will not interfere with others in the use of their property. The Chancellor did exactly what was done in the Seifried case, supra, and we think compliance therewith should be possible, as in many other slaughter houses which are operated without complaints.

For the reasons indicated the judgment is affirmed.