## Colyer v. James.

(Decided June 10, 1930.)

198

W. O. HAYS for appellant.

W. N. FLIPPIN for appellee.

Opinion of the Court by Judge Logan—Affirming.

Appellee is the owner of about four acres of land near the city of Somerset on which his residence is located. Appellant maintaned and operated a rock quarry within a few hundred feet of the residence of appellee. Appellee alleged, in his petition, that in the operation of the quarry appellant had continuously for more than five years last past blasted rock in the quarry with heavy and excessive charges of explosives, thereby producing loud and deafening noises and throwing rocks, dirt and other debris upon the property of appellee and damaging his house by breaking the roof thereon, shaking the foundation awry, cracking the plaster on the walls, jarring out window panes, and thereby endangering the lives of appellee and his family and greatly reducing the value of the use of the property; he also alleged that appellant had kept and stored large quantities of dangerous explosives within a short distance of his residence, and that these acts on the part of appellant constituted a public

nuisance which caused special damages to appellee in the sum of $2,000. By an amended petition he sought an injunction against appellant to prevent the improper operation of the quarry. After certain preliminary motions, appellant filed an answer in which, in addition to a traverse of the material allegations of the petition and amended petition, he alleged by way of plea of estoppel that appellee had stood by and allowed him to install expensive machinery without complaint on the part of appellee; the answer also contained what may be denominated a plea of accord and satisfaction, or settlement, in that it was alleged that appellant had paid for certain damages which had been done to the house; still further by way of estoppel the answer alleged that the quarry had been in operation for many years and was in operation at the time appellant purchased his property, and that the method of operation had been substantially the same at all times. The affirmative defenses contained in the answer were controverted by reply.

A jury was impaneled to pass upon the facts and, at the conclusion of the testimony offered by both parties, the court overruled a motion for a peremptory instruction in favor of appellant, and submitted the issues to the jury, which returned a verdict fixing the damages to the use of the property at the sum of $500. A judgment was entered for that sum by the court and, in addition, he enjoined appellant from discharging, or permitting to be discharged, such blasts of dynamite, or other explosives, in the operation of his quarry as would jar the house of appellee to such an extent as would interfere with the comfortable or reasonable enjoyment of his home, or to cause the house to vibrate, or shake, or to cause the covering of the walls, or ceilings, of the house to fall or be, in any way, damaged, or cause other injury to the house or cause rocks or dirt, or other debris to be thrown on the property of appellee. Appellant was further enjoined from keeping or storing such quantities of dynamite or other high explosives in such proximity to the residence of appellee as would endanger the lives of him or his family, or would endanger their safety, or the residence, or property of appellee.

The motion for a new trial was overruled, and certain of the grounds in the motion are relied on for reversal in the brief filed by appellant.

The first ground relied on is that the court should have instructed the jury to return a verdict for appellant.

and in the argument relating to that ground it is insisted that much of the evidence heard on the trial of the case related to the equity branch of the case and that the jury considered such evidence in reaching its verdict. It is true, as stated by counsel for appellant, that appellee was seeking a recovery for the diminution in value of the use of his home and property, but evidence was introduced showing the general method of operation of the quarry and the result it had on the neighborhood.

The court admonished the jury in language unmistakable, in effect, that it should consider none of the evidence adduced on the trial except that relating to the diminution in value of the use of the home and property of appellee. His admonition was such as to clearly inform the jury of exactly the question that it was to consider, and if any of the evidence introduced on the trial was irrelevant, as it related to the question of damages, any probable effect on the minds of the jurors was removed by the admonition of the court.

It is urged that a peremptory instruction should have been given in favor of appellant because the testimony showed that on more than one occasion the damages had been satisfied by the payment of money. But that is beside the question, as the suit was for the damage to the use of the property and not for the actual physical damage done to the property by throwing rocks and debris upon the house which damaged it. The restoring of window panes or the roof, or the porch which was paid for, was a separate matter from damage to the use of the property, and the court would not have been justified in holding that the small payments made for repairs to the building constituted a settlement of damages to the use of the property.

It is urged that the evidence showed that the blasting, or storing of explosives, was not substantially different from the practice which had been followed for years and which was in use when appellee bought his property. But the record does not bear out this contention. While there was a quarry at the same point which had been used to a limited extent when appellee bought his property, it was not in operation at the time and new operations were not commenced for some months thereafter, and when the new operations were commenced the blasting was done in such a way as to avoid injury to the property of appellee for some years, and, according to the testimony of appellee, the unusual and extraordinary blasting com-

menced about five years prior to the institution of the suit, and he testified that he had complained about it from time to time. There is some conflict in the evidence as to the distance from the house of appellee to the point where the explosives were stored, but the preponderance of the evidence is to the effect that the distance between the home and the place where the explosives were stored was about 150 yards. Appellant placed the distance at less than 100 yards.

Another point urged against the ruling of the court in failing to give a peremptory is that the property belonging to appellee, notwithstanding the damages to it caused by the blasting, is worth about $1,000 more than it was when he purchased it. It is not probable that the blasting in such proximity to the home and the casting of rocks and other debris upon the house from time to time through a period of years enhanced its value. The point is without merit.

Another ground urged is that the testimony of appellee is the chief basis of his recovery, and that he worked in the day time while the quarry was in operation; consequently, he could not know what happened. But when he went home in the afternoon and found that his chimney had been shaken down, that his window panes had been broken out, and that his porch had been shaken off, he had physical evidence of what had happened.

Another reason urged for the reversal of the judgment, because the court did not sustain a peremptory is that appellee remained friendly with appellant, and that he could not see the appellant install his quarry machinery without complaint and thereafter institute suit against him, or that if he had a right to institue suit he waited too long. The law says that he may wait five years, and he sought to recover nothing prior to the beginning of the five-year period, and the fact that he saw machinery and equipment installed would not advise him that there would be such heavy blasting as to interfere with the comfort and convenience of him and his family in his home.

The doctrine announced in Coombs Land Company v. Lanier, 222 Ky. 139, 300 S. W. 328, is not in point. The question there involved was whether a party was estopped to deny the truth of things agreed upon and settled by the terms of a contract, or whether he was estopped by reason of acts arising in the performance of the con-

tract. It is true that it is the general rule that one who induces another to act and believe in a certain manner will not be permitted thereafter to injure such other because of acts or things, which he did under the belief that they were consented to. There was nothing to indicate to appellant that appellee consented to such blasting and such operation of his quarry as would reduce the value of the use of his property.

Still another ground on which it is urged the jury should have been directed to return a verdict for appellant is that appellee leased and thereafter sold to appellant certain property used in connection with the quarry. It is said that he leased, and sold the property to appellant so that he might do the very things that are complained of, but the record does not bear out that statement. The lease or sale of the property had nothing to do with the unreasonable blasting. It was leased at first and thereafter sold to appellant, so that he would have a place to deposit refuse and debris from the quarry. That use was entirely foreign to the blasting.

The case of Karcher v. City of Louisville, 213 Ky. 824, 281 S. W. 1010, is quite a different case from the one now under consideration. In that case the owner of the property conveyed it to another with the knowledge of the purpose for which it was purchased and the use to which it was to be applied. The property was to be used as a plant for the incineration of dead animals as well as wet and dry garbage. The owner knew this fact when he sold the property, and for that reason he could not complain about the inconvenience caused him by using the property for the express purpose for which it was sold. The opinion in that case announces sound principles often approved by this court, but the leasing of the land and the selling of it by appellee was without any knowledge that it would be used by appellant as a dumping ground for refuse and debris from the quarry occasioned by unreasonable and extraordinary blasting.

It is next urged that the judgment should be reversed because the court did not give instructions A, B, and C offered by appellant. Instruction A is substantially embraced in the instructions given. What has already been said disposes of the contention that instruction B should have been given as it related to estoppel by acquiescence, and the same may be said of instruction C, which related to the payment for repairs to the house for specific damage which had been done to it.

The instructions given by the court fairly submitted the questions at issue.

It is insisted that the admonition of the court to the jury amounted to an oral instruction over the objection of appellant, but that is based upon an erroneous idea. The suit was one for damages, and thereafter, by an amended petition, it was sought to enjoin appellant from operating the quarry in such a manner as to reduce the value of the use of the property belonging to appellee. At the conclusion of the evidence the court advised the jury that it was to consider the question of damages to the use of the property as shown by the evidence, and that he was to consider the question of granting an injunction based upon the evidence which had been introduced. The effect of his admonition was as indicated, and we see nothing objectionable in it.

It is argued by counsel for appellant that incompetent evidence was admitted, and a part of that incompetent evidence was the evidence of appellee himself, who testified as to the condition in which he found his property upon his return home on several occasions. He testified from actual knowledge of the heavy blasting which was done in the quarry, and the effect of it on his premises. The evidence was competent. Some of the evidence as to the quantity of dynamite kept in storage was vague and uncertain, but it was not prejudicial. Certain stones were introduced in evidence which were picked up on the premises of appellee, and it is said, in brief, that the evidence did not show that the stones were thrown upon the premises by the blasting. But we think there was enough evidence to indicate that the stones came out of the quarry. Other witnesses testified as to the effect of the blasting upon their property located in the same neighborhood. The court held that such evidence was competent to show the "bigness" of the blasting. It was competent to show whether the blasting was unreasonable, excessive, and extraordinary.

The case of Barrett v. Vreeland, 168 Ky. 471, 182 S. W. 605, is so thorough in the discussion of the questions here presented governing this case that we cite it as a solid foundation on which this opinion may rest. The storing of high explosives near the property of another was discussed in the case of Cumberland Torpedo Company v. Gaines, 201 Ky. 88, 255 S. W. 1046, where it was held that the storage of an explosive in such proximity

to a residence as to constitute a menace to the property of its occupants is a nuisance per se.

The trial was free from error, and the judgment must be affirmed.

Judgment affirmed.